(Slip Opinion)          OCTOBER TERM, 2011          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## JUDULANG *v*. HOLDER, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–694.   Argued October 12, 2011—Decided December 12, 2011

Federal immigration law governs both the exclusion of aliens from admission to this country and the deportation of aliens previously admitted.  Before 1996, these two kinds of action occurred in different procedural settings; since then, the Government has employed a unified "removal proceeding" for exclusions and deportations alike.  But the immigration laws have always provided separate lists of substantive grounds for the two actions.  One list specifies what crimes render an alien excludable, see 8 U. S. C. §1182(a), while another— sometimes overlapping and sometimes divergent—list specifies what crimes render an alien deportable, see §1227(a).

Until repealed in 1996, §212(c) of the Immigration and Nationality Act permitted the Attorney General to grant discretionary relief to an excludable alien, if the alien had lawfully resided in the United States for at least seven years before temporarily leaving the country and if the alien was not excludable on one of two specified grounds. By its terms, §212(c) applied only in exclusion proceedings, but the Board of Immigration Appeals (BIA) extended it decades ago to deportation proceedings as well.  Although Congress substituted a narrower discretionary remedy for §212(c) in 1996, see §1229b, §212(c)'s broader relief remains available to an alien whose removal is based on a guilty plea entered before §212(c)'s repeal, *INS* v. *St. Cyr*, 533 U. S. 289, 326.

In deciding whether to exclude such an alien, the BIA first checks the statutory ground identified by the Department of Homeland Security (DHS) as the basis for exclusion.  Unless that ground is one of the two falling outside §212(c)'s scope, the alien is eligible for discretionary relief.  The BIA then determines whether to grant relief based on such factors as the seriousness of the offense.

This case concerns the BIA's method for applying §212(c) in the deportation context. The BIA's approach, known as the "comparable-grounds" rule, evaluates whether the charged deportation ground has a close analogue in the statute's list of exclusion grounds. If the deportation ground consists of a set of crimes "substantially equivalent" to the set making up an exclusion ground, the alien can seek §212(c) relief. But if the deportation ground covers different or more or fewer offenses than any exclusion ground, the alien is ineligible for relief, even if the alien's particular offense falls within an exclusion ground.

Petitioner Judulang, who has lived continuously in the United States as a lawful permanent resident since 1974, pleaded guilty to voluntary manslaughter in 1988. After he pleaded guilty to another crime in 2005, DHS commenced a deportation action, charging him with having committed an "aggravated felony" involving "a crime of violence" based on his manslaughter conviction. The Immigration Judge ordered Judulang's deportation, and the BIA affirmed, finding Judulang ineligible for §212(c) relief because the "crime of violence" deportation ground is not comparable to any exclusion ground. The Ninth Circuit, having previously upheld the BIA's comparable-grounds rule, denied Judulang's petition for review.

*Held:* The BIA's policy for applying §212(c) in deportation cases is "arbitrary and capricious" under the Administrative Procedure Act, 5 U. S. C. §706(2)(A). Pp. 9–21.

(a) While agencies have expertise and experience in administering their statutes that no court may properly ignore, courts retain a narrow but important role in ensuring that agencies have engaged in reasoned decisionmaking. Thus, in reviewing the BIA's action, this Court must assess, among other matters, "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43. That task involves examining the reasons for agency decisions, or the absence of such reasons.

The comparable-grounds approach cannot survive scrutiny under this standard. By hinging a deportable alien's eligibility for discretionary relief on the chance correspondence between statutory categories—a matter irrelevant to the alien's fitness to reside in this country—the BIA has failed to exercise its discretion in a reasoned manner. Pp. 9–10.

(b) Even if the BIA has legitimate reasons for limiting §212(c)'s scope in deportation cases, it must do so in some rational way. In other words, the BIA must use an approach that is tied to the purposes of the immigration laws or the appropriate operation of the immigration system. The comparable-grounds rule has no connection

to these factors. Instead, it makes §212(c) eligibility turn on an irrelevant comparison between statutory provisions. Whether the set of offenses in a particular deportation ground lines up with the set in an exclusion ground has nothing to do with whether a deportable alien whose prior conviction falls within both grounds merits the ability to stay in this country. Here, Judulang was found ineligible for §212(c) relief because the "crime of violence" deportation ground includes a few offenses—simple assault, minor burglary, and unauthorized use of a vehicle—not found in the similar moral turpitude exclusion ground. But the inclusion of simple assaults and minor burglaries in the deportation ground is irrelevant to the merits of Judulang's case.

The BIA's approach has other odd features. In applying the comparable-grounds rule, the BIA has denied relief to aliens whose deportation ground fits entirely within a much broader exclusion ground. Yet providing relief in exclusion cases to a broad class of aliens hardly justifies denying relief in deportation cases to a subset of that group. In addition, the outcome of the comparable-grounds analysis may itself rest on an arbitrary decision. An alien's prior conviction could fall within a number of deportation grounds, only one of which corresponds to an exclusion ground. In such cases, an alien's eligibility for relief would hinge on an individual official's decision as to which deportation ground to charge. An alien appearing before one official may suffer deportation, while an identically situated alien appearing before another may gain the right to stay in this country.

In short, the comparable-grounds approach does not rest on any factors relevant to whether an alien should be deported. Instead, it turns deportation decisions into a "sport of chance." *Rosenberg* v. *Fleuti*, 374 U. S. 449, 455. That is what the APA's "arbitrary and capricious" standard is designed to prevent. Pp. 10–15.

(c) The Government's arguments in defense of the comparable-grounds rule are not persuasive. First, §212(c)'s text does not support the rule. That section cannot provide a textual anchor for any method of providing discretionary relief in deportation cases because it addresses only exclusion. Second, the history of the comparable-grounds rule does not work in the Government's favor. The BIA repeatedly vacillated in its method for applying §212(c) to deportable aliens, settling on the current rule only in 2005. Third, the Government's claim that the comparable-grounds rule saves time and money falls short. Cost may be an important factor for agencies to consider in many contexts, but cheapness alone cannot save an arbitrary agency policy. In any event, it is unclear that the comparable-grounds rule saves money when compared with alternative approaches. Pp. 16–21.

Syllabus

249 Fed. Appx. 499, reversed and remanded.

KAGAN, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 10–694

———————

## JOEL JUDULANG, PETITIONER *v.* ERIC H. HOLDER, JR., ATTORNEY GENERAL

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[December 12, 2011]

JUSTICE KAGAN delivered the opinion of the Court.

This case concerns the Board of Immigration Appeals' (BIA or Board) policy for deciding when resident aliens may apply to the Attorney General for relief from deportation under a now-repealed provision of the immigration laws. We hold that the BIA's approach is arbitrary and capricious.

The legal background of this case is complex, but the principle guiding our decision is anything but. When an administrative agency sets policy, it must provide a reasoned explanation for its action. That is not a high bar, but it is an unwavering one. Here, the BIA has failed to meet it.

## I

### A

Federal immigration law governs both the exclusion of aliens from admission to this country and the deportation of aliens previously admitted. Before 1996, these two kinds of action occurred in different procedural settings, with an alien seeking entry (whether for the first time or upon return from a trip abroad) placed in an "exclusion

proceeding" and an alien already here channeled to a
"deportation proceeding." See *Landon* v. *Plasencia*, 459
U. S. 21, 25–26 (1982) (comparing the two). Since that
time, the Government has used a unified procedure,
known as a "removal proceeding," for exclusions and de-
portations alike. See 8 U. S. C. §§1229, 1229a. But the
statutory bases for excluding and deporting aliens have
always varied. Now, as before, the immigration laws
provide two separate lists of substantive grounds, princi-
pally involving criminal offenses, for these two actions.
One list specifies what kinds of crime render an alien
excludable (or in the term the statute now uses, "inadmis-
sible"), see §1182(a) (2006 ed., Supp. IV), while another—
sometimes overlapping and sometimes divergent—list
specifies what kinds of crime render an alien deportable
from the country, see §1227(a).

An additional, historic difference between exclusion
and deportation cases involved the ability of the Attorney
General to grant an alien discretionary relief. Until re-
pealed in 1996, §212(c) of the Immigration and Nationality
Act, 66 Stat. 187, 8 U. S. C. §1182(c) (1994 ed.), authorized
the Attorney General to admit certain excludable aliens.
See also §136(p) (1926 ed.) (predecessor provision to
§212(c)). The Attorney General could order this relief
when the alien had lawfully resided in the United States
for at least seven years before temporarily leaving the
country, unless the alien was excludable on one of two
specified grounds. See §1182(c) (1994 ed.).[1]  But by its

––––––––––

   [1] The relevant part of §212(c), in the version of the exclusion statute
all parties use, read as follows:

   "Aliens lawfully admitted for permanent residence who temporarily
proceeded abroad voluntarily and not under an order of deportation,
and who are returning to a lawful unrelinquished domicile of seven
consecutive years, may be admitted in the discretion of the Attorney
General without regard to the provisions of subsection (a) of this section
(other than paragraphs (3) and (9)(C))." 8 U. S. C. §1182(c) (1994 ed.).

terms, §212(c) did not apply when an alien was being deported.

This discrepancy threatened to produce an odd result in a case called *Matter of L-*, 1 I. & N. Dec. 1 (1940), leading to the first-ever grant of discretionary relief in a deportation case. L- was a permanent resident of the United States who had been convicted of larceny. Although L-'s crime made him inadmissible, he traveled abroad and then returned to the United States without any immigration official's preventing his entry. A few months later, the Government caught up with L- and initiated a deportation action based on his larceny conviction. Had the Government apprehended L- at the border a short while earlier, he would have been placed in an exclusion proceeding where he could have applied for discretionary relief. But because L- was instead in a deportation proceeding, no such relief was available. Responding to this apparent anomaly, Attorney General Robert Jackson (on referral of the case from the BIA) determined that L- could receive a waiver: L-, Jackson said, "should be permitted to make the same appeal to discretion that he could have made if denied admission" when returning from his recent trip. *Id.*, at 6. In accord with this decision, the BIA adopted a policy of allowing aliens in deportation proceedings to apply for discretionary relief under §212(c) whenever they had left and reentered the country after becoming deportable. See *Matter of S-*, 6 I. & N. Dec. 392, 394–396 (1954).

But this approach created another peculiar asymmetry: Deportable aliens who had traveled abroad and returned could receive §212(c) relief, while those who had never left

--------

The parenthetical clause of this section prevented the Attorney General from waiving exclusion for aliens who posed a threat to national security, §1182(a)(3), and aliens who engaged in international child abduction, §1182(a)(9)(C).

could not.  In *Francis* v. *INS*, 532 F. 2d 268 (1976), the
Court of Appeals for the Second Circuit concluded that
this disparity violated equal protection.  *Id.,* at 273 ("[A]n
alien whose ties with this country are so strong that he
has never departed after his initial entry should receive at
least as much consideration as an individual who may
leave and return from time to time").  The BIA acquiesced
in the Second Circuit's decision, see *Matter of Silva*, 16
I. & N. Dec. 26 (1976), thus applying §212(c) in deporta-
tion proceedings regardless of an alien's travel history.

All this might have become academic when Congress
repealed §212(c) in 1996 and substituted a new discretion-
ary remedy, known as "cancellation of removal," which is
available in a narrow range of circumstances to excludable
and deportable aliens alike.  See 8 U. S. C. §1229b.  But in
*INS* v. *St. Cyr*, 533 U. S. 289, 326 (2001), this Court con-
cluded that the broader relief afforded by §212(c) must
remain available, on the same terms as before, to an alien
whose removal is based on a guilty plea entered before
§212(c)'s repeal.  We reasoned that aliens had agreed to
those pleas with the possibility of discretionary relief in
mind and that eliminating this prospect would ill comport
with "'familiar considerations of fair notice, reasonable
reliance, and settled expectations.'"  *Id.,* at 323 (quoting
*Landgraf* v. *USI Film Products*, 511 U. S. 244, 270 (1994)).
Accordingly, §212(c) has had an afterlife for resident
aliens with old criminal convictions.

When the BIA is deciding whether to *exclude* such an
alien, applying §212(c) is an easy matter.  The Board
first checks the statutory ground that the Department
of Homeland Security (DHS) has identified as the basis
for exclusion; the Board may note, for example, that
DHS has charged the alien with previously committing
a "crime involving moral turpitude," see 8 U. S. C.
§1182(a)(2)(A)(i)(I).  Unless the charged ground is one of
the pair falling outside §212(c)'s scope, see n. 1, *supra*, the

alien is eligible for discretionary relief. The Board then determines whether to grant that relief based on such factors as "the seriousness of the offense, evidence of either rehabilitation or recidivism, the duration of the alien's residence, the impact of deportation on the family, the number of citizens in the family, and the character of any service in the Armed Forces." *St. Cyr*, 533 U. S., at 296, n. 5.

By contrast, when the BIA is deciding whether to *deport* an alien, applying §212(c) becomes a tricky business. Recall that §212(c) applies on its face only to exclusion decisions. So the question arises: How is the BIA to determine when an alien should receive §212(c) relief in the deportation context?

One approach that the BIA formerly used considered how the alien would fare in an exclusion proceeding. To perform this analysis, the Board would first determine whether the criminal conviction making the alien deportable fell within a statutory ground for exclusion. Almost all convictions did so, largely because the "crime involving moral turpitude" ground encompasses so many offenses.[2] Assuming that threshold inquiry were met, the Board would mimic its approach in exclusion cases—first making sure the statutory ground at issue was not excepted from §212(c) and then conducting the multi-factor analysis. See *Matter of Tanori*, 15 I. & N. Dec. 566, 567–568 (1976); *In re Manzueta*, No. A93 022 672, 2003 WL 23269892 (BIA, Dec. 1, 2003).

A second approach is the one challenged here; definitively adopted in 2005 (after decades of occasional use), it often is called the "comparable-grounds" rule. See, *e.g., De la Rosa* v. *U. S. Attorney General*, 579 F. 3d 1327, 1332

———————

[2] Firearms offenses are the most significant crimes falling outside the statutory grounds for exclusion. See *Matter of Hernandez-Casillas*, 20 I. & N. Dec. 262, 282, n. 4 (1990).

(CA11 2009). That approach evaluates whether the ground for deportation charged in a case has a close analogue in the statute's list of exclusion grounds. See *In re Blake*, 23 I. & N. Dec. 722, 728 (2005); *In re Brieva-Perez*, 23 I. & N. Dec. 766, 772–773 (2005).[3] If the deportation ground consists of a set of crimes "substantially equivalent" to the set of offenses making up an exclusion ground, then the alien can seek §212(c) relief. *Blake*, 23 I. & N. Dec., at 728. But if the deportation ground charged covers significantly different or more or fewer offenses than any exclusion ground, the alien is not eligible for a waiver. Such a divergence makes §212(c) inapplicable even if the particular offense committed by the alien falls within an exclusion ground.

Two contrasting examples from the BIA's cases may help to illustrate this approach. Take first an alien convicted of conspiring to distribute cocaine, whom DHS seeks to deport on the ground that he has committed an "aggravated felony" involving "illicit trafficking in a controlled substance." 8 U. S. C. §§1101(a)(43)(B), 1227(a)(2)(A)(iii). Under the comparable-grounds rule, the immigration judge would look to see if that deportation ground covers substantially the same offenses as an exclusion ground. And according to the BIA in *Matter of Meza*, 20 I. & N. Dec. 257 (1991), the judge would find an adequate match—the exclusion ground applicable to aliens who have committed offenses "relating to a controlled substance," 8 U. S. C. §§1182(a)(2)(A)(i)(II) and (a)(2)(C).

Now consider an alien convicted of first-degree sexual abuse of a child, whom DHS wishes to deport on the ground that he has committed an "aggravated felony"

---

[3] *Blake* and *Brieva-Perez* clarified a 2004 regulation issued by the BIA stating that an alien is ineligible for §212(c) relief when deportable "on a ground which does not have a statutory counterpart in section 212." 8 CFR §1212.3(f)(5) (2010).

involving "sexual abuse of a minor." §§1101(a)(43)(A), 1227(a)(2)(A)(iii). May this alien seek §212(c) relief? According to the BIA, he may not do so—not because his crime is too serious (that is irrelevant to the analysis), but instead because no statutory ground of exclusion covers substantially the same offenses. To be sure, the alien's own offense is a "crime involving moral turpitude," 8 U. S. C. §1182(a)(2)(A)(i)(I), and so fits within an exclusion ground. Indeed, that will be true of most or all offenses included in this deportation category. See *supra,* at 5. But on the BIA's view, the "moral turpitude" exclusion ground "addresses a distinctly different and much broader category of offenses than the aggravated felony sexual abuse of a minor charge." *Blake*, 23 I. & N. Dec., at 728. And the much greater sweep of the exclusion ground prevents the alien from seeking discretionary relief from deportation.[4]

Those mathematically inclined might think of the comparable-grounds approach as employing Venn diagrams. Within one circle are all the criminal offenses composing the particular ground of deportation charged. Within other circles are the offenses composing the various exclusion grounds. When, but only when, the "deportation circle" sufficiently corresponds to one of the "exclusion circles" may an alien apply for §212(c) relief.

─────────────

[4] Careful readers may note that the example involving controlled substances offered in the last paragraph also involves an exclusion ground that sweeps more broadly than the deportation ground charged. The deportation ground requires "trafficking" in a controlled substance, whereas the exclusion ground includes all possession offenses as well. The BIA nonetheless held in *Meza* that the degree of overlap between the two grounds was sufficient to make the alien eligible for §212(c) relief. That holding reveals the broad discretion that the BIA currently exercises in deciding when two statutory grounds are comparable *enough*.

## B

Petitioner Joel Judulang is a native of the Philippines who entered the United States in 1974 at the age of eight. Since that time, he has lived continuously in this country as a lawful permanent resident. In 1988, Judulang took part in a fight in which another person shot and killed someone. Judulang was charged as an accessory and eventually pleaded guilty to voluntary manslaughter. He received a 6-year suspended sentence and was released on probation immediately after his plea.

In 2005, after Judulang pleaded guilty to another criminal offense (this one involving theft), DHS commenced an action to deport him. DHS charged Judulang with having committed an "aggravated felony" involving "a crime of violence," based on his old manslaughter conviction. 8 U. S. C. §§1101(a)(43)(F), 1227(a)(2)(A)(iii).[5] The Immigration Judge ordered Judulang's deportation, and the BIA affirmed. As part of its decision, the BIA considered whether Judulang could apply for §212(c) relief. It held that he could not do so because the "crime of violence" deportation ground is not comparable to any exclusion ground, including the one for crimes involving moral turpitude. App. to Pet. for Cert. 8a. The Court of Appeals for the Ninth Circuit denied Judulang's petition for review in reliance on circuit precedent upholding the BIA's comparable-grounds approach. *Judulang* v. *Gonzales*, 249 Fed. Appx. 499, 502 (2007) (citing *Abebe* v. *Gonzales*, 493 F. 3d 1092 (2007)).

We granted certiorari, 563 U. S. ___ (2011), to resolve a circuit split on the approach's validity.[6] We now reverse.

——————

[5] DHS also charged two other grounds for deportation, but the BIA did not rule on those grounds and they are not before us.

[6] Compare *Blake* v. *Carbone*, 489 F. 3d 88, 103 (CA2 2007) (rejecting the BIA's approach and holding instead that "[i]f the offense that renders [an alien] deportable would render a similarly situated [alien] excludable, the deportable [alien] is eligible for a waiver of deporta-

## II

This case requires us to decide whether the BIA's policy for applying §212(c) in deportation cases is "arbitrary [or] capricious" under the Administrative Procedure Act (APA), 5 U. S. C. §706(2)(A).[7]  The scope of our review under this standard is "narrow"; as we have often recognized, "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43 (1983); see *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U. S. 402, 416 (1971).  Agencies, the BIA among them, have expertise and experience in administering their statutes that no court can properly ignore.  But courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking.  When reviewing an agency action, we must assess, among other matters, "'whether the decision was based on a consideration of the relevant factors and whether there

———————

tion"), with *Koussan* v. *Holder*, 556 F. 3d 403, 412–414 (CA6 2009) (upholding the comparable-grounds policy); *Caroleo* v. *Gonzales*, 476 F. 3d 158, 162–163, 168 (CA3 2007) (same); *Kim* v. *Gonzales*, 468 F. 3d 58, 62–63 (CA1 2006) (same).

[7] The Government urges us instead to analyze this case under the second step of the test we announced in *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984), to govern judicial review of an agency's statutory interpretations.  See Brief for Respondent 19.  Were we to do so, our analysis would be the same, because under *Chevron* step two, we ask whether an agency interpretation is "'arbitrary or capricious in substance.'" *Mayo Foundation for Medical Ed. and Research* v. *United States*, 562 U. S. \_\_\_ , \_\_\_ (2011) (slip op., at 7) (quoting *Household Credit Services, Inc.* v. *Pfennig*, 541 U. S. 232, 242 (2004)).  But we think the more apt analytic framework in this case is standard "arbitrary [or] capricious" review under the APA.  The BIA's comparable-grounds policy, as articulated in *In re Blake*, 23 I. & N. Dec. 722 (2005) and *In re Brieva-Perez*, 23 I. & N. Dec. 766 (2005), is not an interpretation of any statutory language—nor could it be, given that §212(c) does not mention deportation cases, see *infra*, at 16–17, and n. 11.

has been a clear error of judgment.'" *State Farm*, 463 U. S., at 43 (quoting *Bowman Transp., Inc.* v. *Arkansas-Best Freight System, Inc.*, 419 U. S. 281, 285 (1974)). That task involves examining the reasons for agency decisions—or, as the case may be, the absence of such reasons. See *FCC* v. *Fox Television Stations, Inc.*, 556 U. S. 502, 515 (2009) (noting "the requirement that an agency provide reasoned explanation for its action").

The BIA has flunked that test here. By hinging a deportable alien's eligibility for discretionary relief on the chance correspondence between statutory categories—a matter irrelevant to the alien's fitness to reside in this country—the BIA has failed to exercise its discretion in a reasoned manner.

## A

The parties here spend much time disputing whether the BIA must make discretionary relief available to deportable and excludable aliens on identical terms. As this case illustrates, the comparable-grounds approach does not do so. If Judulang were seeking entry to this country, he would be eligible for §212(c) relief; voluntary manslaughter is "a crime involving moral turpitude," and so his conviction falls within an exclusion ground. But Judulang cannot apply for relief from deportation because the "crime of violence" ground charged in his case does not match any exclusion ground (including the one for "turpitudinous" crimes). See *infra*, at 13. Judulang argues that this disparity is impermissible because *any* disparity between excludable and deportable aliens is impermissible: If an alien may seek §212(c) relief in an exclusion case, he also must be able to seek such relief in a deportation case. See Brief for Petitioner 47–51.[8] But the Gov-

_____

[8] Judulang also argues that the BIA is making an impermissible distinction between two groups of deportable aliens—those who have recently left and returned to the country and those who have not.

ernment notes that the immigration laws have always drawn distinctions between exclusion and deportation. See Brief for Respondent 51. And the Government presses a policy reason for making §212(c) relief more readily available in exclusion cases. Doing so, it argues, will provide an incentive for some resident aliens (*i.e.*, those eligible for a waiver from exclusion, but not deportation) to report themselves to immigration officials, by applying for advance permission to exit and reenter the country. In contrast, applying §212(c) uniformly might lead all aliens to "try to evade immigration officials for as long as possible," because they could in any event "seek [discretionary] relief if caught." *Id.*, at 52.

In the end, we think this dispute beside the point, and we do not resolve it. The BIA may well have legitimate reasons for limiting §212(c)'s scope in deportation cases. But still, it must do so in some rational way. If the BIA proposed to narrow the class of deportable aliens eligible to seek §212(c) relief by flipping a coin—heads an alien may apply for relief, tails he may not—we would reverse the policy in an instant. That is because agency action must be based on non-arbitrary, "'relevant factors,'" *State*

_____

According to Judulang, the BIA is treating the former as if they were seeking admission, while applying the "comparable grounds" approach only to the latter. See Reply Brief for Petitioner 16–18. That is the kind of distinction the Second Circuit held in *Francis* v. *INS*, 532 F. 2d 268 (1976), violated equal protection. See *supra*, at 3–4. But the Government contends that it is drawing no such line—that it is applying the comparable-grounds policy to all deportable aliens. Brief for Respondent 29. We think the available evidence tends to support the Government's representation. See *In re Meza-Castillo*, No. A091 366 529, 2009 WL 455596 (BIA, Feb. 9, 2009) (applying comparable-grounds analysis to a deportable alien who had left and returned to the country); *In re Valenzuela-Morales*, No. A40 443 512, 2008 WL 2079382 (BIA, Apr. 23, 2008) (same). But in light of our holding that the comparable-grounds approach is arbitrary and capricious, we need not resolve this dispute about the BIA's practice.

*Farm*, 463 U. S., at 43 (quoting *Bowman Transp.*, 419 U. S., at 285), which here means that the BIA's approach must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system. A method for disfavoring deportable aliens that bears no relation to these matters—that neither focuses on nor relates to an alien's fitness to remain in the country—is arbitrary and capricious. And that is true regardless whether the BIA might have acted to limit the class of deportable aliens eligible for §212(c) relief on other, more rational bases.

The problem with the comparable-grounds policy is that it does not impose such a reasonable limitation. Rather than considering factors that might be thought germane to the deportation decision, that policy hinges §212(c) eligibility on an irrelevant comparison between statutory provisions. Recall that the BIA asks whether the set of offenses in a particular deportation ground lines up with the set in an exclusion ground. But so what if it does? Does an alien charged with a particular deportation ground become more worthy of relief because that ground happens to match up with another? Or less worthy of relief because the ground does not? The comparison in no way changes the alien's prior offense or his other attributes and circumstances. So it is difficult to see why that comparison should matter. Each of these statutory grounds contains a slew of offenses. Whether each contains the same slew has nothing to do with whether a deportable alien whose prior conviction falls within both grounds merits the ability to seek a waiver.[9]

————————
[9] The case would be different if Congress had intended for §212(c) relief to depend on the interaction of exclusion grounds and deportation grounds. But the Government has presented us with no evidence to this effect, nor have we found any. See *Blake*, 489 F. 3d, at 102 (Congress never contemplated, in drafting the immigration laws, "that its grounds of deportation would have any connection with the grounds of

This case well illustrates the point. In commencing Judulang's deportation proceeding, the Government charged him with an "aggravated felony" involving a "crime of violence" based on his prior manslaughter conviction. See App. to Pet. for Cert. 11a–12a. That made him ineligible for §212(c) relief because the "crime of violence" deportation ground does not sufficiently overlap with the most similar exclusion ground, for "crime[s] involving moral turpitude." The problem, according to the BIA, is that the "crime of violence" ground includes a few offenses—simple assault, minor burglary, and unauthorized use of a vehicle—that the "moral turpitude" ground does not. See *Brieva-Perez*, 23 I. & N. Dec., at 772–773; Tr. of Oral Arg. 28–29, 40–41. But this statutory difference in no way relates to Judulang—or to most other aliens charged with committing a "crime of violence." Perhaps aliens like Judulang should be eligible for §212(c) relief, or perhaps they should not. But that determination is not sensibly made by establishing that simple assaults and minor burglaries fall outside a ground for exclusion. That fact is as extraneous to the merits of the case as a coin flip would be. It makes Judulang no less deserving of the opportunity to seek discretionary relief—just as its converse (the inclusion of simple assaults and burglaries in the "moral turpitude" exclusion ground) would make him no more so.

Or consider a different headscratching oddity of the comparable-grounds approach—that it may deny §212(c) eligibility to aliens whose deportation ground fits entirely inside an exclusion ground. The BIA's *Blake* decision, noted earlier, provides an example. See *supra,* at 6–7. The deportation ground charged was "aggravated felony" involving "sexual abuse of a minor"; the closest exclusion ground was, once again, a "crime [of] moral turpitude." 23

──────────

exclusion" in the application of §212(c)); see also *infra*, at 16–17.

I. & N. Dec., at 727.  Here, the BIA's problem was not that the deportation ground covered too many offenses; all or virtually all the crimes within that ground also are crimes of moral turpitude.  Rather, the BIA objected that the deportation ground covered too few crimes—or put oppositely, that "the moral turpitude ground of exclusion addresses a . . . much broader category of offenses."  *Id.*, at 728.  But *providing* relief in exclusion cases to a broad class of aliens hardly justifies *denying* relief in deportation cases to a subset of that group.[10]  (The better argument would surely be the reverse—that giving relief in the one context supports doing so in the other.)  Again, we do not say today that the BIA must give all deportable aliens meeting §212(c)'s requirements the chance to apply for a waiver.  See *supra*, at 11–12.  The point is instead that the BIA cannot make that opportunity turn on the meaningless matching of statutory grounds.

And underneath this layer of arbitrariness lies yet another, because the outcome of the Board's comparable-grounds analysis itself may rest on the happenstance of an immigration official's charging decision.  This problem arises because an alien's prior conviction may fall within a number of deportation grounds, only one of which corresponds to an exclusion ground.  Consider, for example, an alien who entered the country in 1984 and committed voluntary manslaughter in 1988.  That person could be charged (as Judulang was) with an "aggravated felony" involving a "crime of violence," see 8 U. S. C. §§1101(a)(43)(F), 1227(a)(2)(A)(iii).  If so, the alien could not seek a waiver because of the absence of a comparable exclusion ground.  But the alien also could be charged

—————

[10] Perhaps that is why the BIA declined to apply similar reasoning in *Meza*—a case also involving an exclusion ground that sweeps more broadly than a deportation ground (although not to the same extent as in *Blake*).  See *supra,* at 6.

with "a crime involving moral turpitude committed within five years . . . after the date of admission," see §1227(a)(2)(A)(i)(I).  And if that were the deportation charge, the alien *could* apply for relief, because the ground corresponds to the "moral turpitude" ground used in exclusion cases.  See *In re Salmon*, 16 I. & N. Dec. 734 (1978).  So everything hangs on the charge.  And the Government has provided no reason to think that immigration officials must adhere to any set scheme in deciding what charges to bring, or that those officials are exercising their charging discretion with §212(c) in mind.  See Tr. of Oral Arg. 34–36.  So at base everything hangs on the fortuity of an individual official's decision.  An alien appearing before one official may suffer deportation; an identically situated alien appearing before another may gain the right to stay in this country.

  In a foundational deportation case, this Court recognized the high stakes for an alien who has long resided in this country, and reversed an agency decision that would "make his right to remain here dependent on circumstances so fortuitous and capricious." *Delgadillo* v. *Carmichael*, 332 U. S. 388, 391 (1947).  We think the policy before us similarly flawed.  The comparable-grounds approach does not rest on any factors relevant to whether an alien (or any group of aliens) should be deported.  It instead distinguishes among aliens—decides who should be eligible for discretionary relief and who should not—solely by comparing the metes and bounds of diverse statutory categories into which an alien falls.  The resulting Venn diagrams have no connection to the goals of the deportation process or the rational operation of the immigration laws.  Judge Learned Hand wrote in another early immigration case that deportation decisions cannot be made a "sport of chance."  See *Di Pasquale* v. *Karnuth*, 158 F. 2d 878, 879 (CA2 1947) (quoted in *Rosenberg* v. *Fleuti*, 374 U. S. 449, 455 (1963)).  That is what the comparable-grounds rule

brings about, and that is what the APA's "arbitrary and capricious" standard is designed to thwart.

## B

The Government makes three arguments in defense of the comparable-grounds rule—the first based on statutory text, the next on history, the last on cost. We find none of them persuasive.

### 1

The Government initially contends that the comparable-grounds approach is more faithful to "the statute's language," Brief for Respondent 21—or otherwise said, that "lifting that limit 'would take immigration practice even further from the statutory text,'" *id.*, at 22 (quoting *Matter of Hernandez-Casillas*, 20 I. & N. Dec. 262, 287 (1990)). In the Government's view, §212(c) is "phrased in terms of waiving statutorily specified grounds of exclusion"; that phrasing, says the Government, counsels a comparative analysis of grounds when applying §212(c) in the deportation context. Brief for Respondent 21; see Tr. of Oral Arg. 34 ("[T]he reason [the comparable-grounds approach] makes sense is because the statute only provides for relief from grounds of . . . exclusion").

The first difficulty with this argument is that it is based on an inaccurate description of the statute. Section 212(c) instructs that certain resident aliens "may be admitted in the discretion of the Attorney General" notwithstanding any of "the provisions of subsection (a) . . . (other than paragraphs (3) and (9)(C))." 8 U. S. C. §1182(c) (1994 ed.). Subsection (a) contains the full list of exclusion grounds; paragraphs (3) and (9)(C) (which deal with national security and international child abduction) are two among these. What §212(c) actually says, then, is that the Attorney General may admit any excludable alien, except if the alien is charged with two specified grounds. And that

means that once the Attorney General determines that the alien is *not* being excluded for those two reasons, the ground of exclusion no longer matters. At that point, the alien is eligible for relief, and the thing the Attorney General waives is not a particular exclusion ground, but the simple denial of entry. So the premise of the Government's argument is wrong. And if the premise, so too the conclusion—that is, because §212(c)'s text is *not* "phrased in terms of waiving statutorily specified grounds of exclusion," Brief for Respondent 21, it cannot counsel a search for corresponding grounds of deportation.

More fundamentally, the comparable-grounds approach would not follow from §212(c) even were the Government right about the section's phrasing. That is because §212(c) simply has nothing to do with deportation: The provision was not meant to interact with the statutory grounds for deportation, any more than those grounds were designed to interact with the provision. Rather, §212(c) refers solely to exclusion decisions; its extension to deportation cases arose from the agency's extra-textual view that some similar relief should be available in that context to avoid unreasonable distinctions. Cf., *e.g., Matter of L-*, 1 I. & N. Dec., at 5; see also *supra*, at 3–4.[11] Accordingly, the text of §212(c), whether or not phrased in terms of "waiving grounds of exclusion," cannot support the BIA's use of the

--------

[11] Congress amended §212(c), just five months before repealing it, to include a first-time reference to deportation cases. That amendment prohibited the Attorney General from granting discretionary relief to aliens deportable on several specified grounds. See Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1277 (effective Apr. 24, 1996). The change does not affect our analysis, nor does the Government argue it should. As the Government notes, the amendment "did not speak to the viability of the Board's" comparable-grounds rule, but instead made categorically ineligible for §212(c) relief "those deportable by reason of certain crimes." Brief for Respondent 20. Presumably, Congress thought those crimes particularly incompatible with an alien's continued residence in this country.

comparable-grounds rule—or, for that matter, any other method for extending discretionary relief to deportation cases. We well understand the difficulties of operating in such a text-free zone; indeed, we appreciate the Government's yearning for a textual anchor. But §212(c), no matter how many times read or parsed, does not provide one.

2

In disputing Judulang's contentions, the Government also emphasizes the comparable-grounds rule's vintage. See Brief for Respondent 22–23, 30–43. As an initial matter, we think this a slender reed to support a significant government policy. Arbitrary agency action becomes no less so by simple dint of repetition. (To use a prior analogy, flipping coins to determine §212(c) eligibility would remain as arbitrary on the thousandth try as on the first.) And longstanding capriciousness receives no special exemption from the APA. In any event, we cannot detect the consistency that the BIA claims has marked its approach to this issue. To the contrary, the BIA has repeatedly vacillated in its method for applying §212(c) to deportable aliens.

Prior to 1984, the BIA endorsed a variety of approaches. In *Matter of T-*, 5 I. & N. Dec. 389, 390 (1953), for example, the BIA held that an alien was not eligible for §212(c) relief because her "ground of deportation" did not appear in the exclusion statute. That decision anticipated the comparable-grounds approach that the BIA today uses. But in *Tanori*, the BIA pronounced that a deportable alien could apply for a waiver because "the same facts"—in that case, a marijuana conviction—would have allowed him to seek §212(c) relief in an exclusion proceeding. 15 I. & N. Dec., at 568. That approach is more nearly similar to the one Judulang urges here. And then, in *Matter of Granados*, 16 I. & N. Dec. 726, 728 (1979), the BIA tried to have

it both ways:  It denied §212(c) eligibility *both* because the deportation ground charged did not correspond to, *and* because the alien's prior conviction did not fall within, a waivable ground of exclusion.  In short, the BIA's cases were all over the map.

The Government insists that the BIA imposed order in *Matter of Wadud*, 19 I. & N. Dec. 182, 185–186 (1984), when it held that a deportable alien could not seek §212(c) relief unless the deportation ground charged had an "analogous ground of inadmissibility."  See Brief for Respondent 40–41.  But the BIA's settlement, if any, was fleeting.  Just seven years later, the BIA adopted a new policy entirely, extending §212(c) eligibility to "aliens deportable under any ground of deportability except those where there is a comparable ground of exclusion which has been specifically excepted from section 212(c)."  *Hernandez-Casillas*, 20 I. & N. Dec., at 266.  That new rule turned the comparable-grounds approach inside-out, allowing aliens to seek §212(c) relief in deportation cases except when the ground charged corresponded to an exclusion ground that could *not* be waived.  To be sure, the Attorney General (on referral of the case from the BIA), disavowed this position in favor of the more standard version of the comparable-grounds rule.  *Id.,* at 287.  But even while doing so, the Attorney General stated that "an alien subject to deportation must have the same opportunity to seek discretionary relief as an alien . . . subject to exclusion."  *Ibid.*  That assertion is exactly the one Judulang makes in this case; it is consonant not with the comparable-grounds rule the BIA here defends, but instead with an inquiry into whether an alien's prior conviction falls within an exclusion ground.

Given these mixed signals, it is perhaps not surprising that the BIA continued to alternate between approaches in the years that followed.  Immediately after the Attorney General's opinion in *Hernandez-Casillas*, the BIA en-

dorsed the comparable-grounds approach on several occasions. See *Meza*, 20 I. & N. Dec., at 259; *Matter of Montenegro*, 20 I. & N. Dec. 603, 604–605 (1992); *Matter of Gabryelsky*, 20 I. & N. Dec. 750, 753–754 (1993); *In re Esposito*, 21 I. & N. Dec. 1, 6–7 (1995); *In re Jimenez-Santillano*, 21 I. & N. Dec. 567, 571–572 (1996). But just a few years later, the BIA issued a series of unpublished opinions that asked only whether a deportable alien's prior conviction fell within an exclusion ground. See, *e.g., In re Manzueta*, No. A93 022 672, 2003 WL 23269892 (Dec. 1, 2003). Not until the BIA's decisions in *Blake* and *Brieva-Perez* did the pendulum stop swinging. That history hardly supports the Government's view of a consistent agency practice.[12]

3

The Government finally argues that the comparable-grounds rule saves time and money. The Government claims that comparing deportation grounds to exclusion grounds can be accomplished in just a few "precedential decision[s]," which then can govern broad swaths of cases. See Brief for Respondent 46. By contrast, the Government argues, Judulang's approach would force it to determine whether each and every crime of conviction falls within an exclusion ground. Further, the Government contends that Judulang's approach would grant eligibility to a greater

––––––––––

[12] Because we find the BIA's prior practice so unsettled, we likewise reject Judulang's argument that *Blake* and *Brieva-Perez* were impermissibly retroactive. To succeed on that theory, Judulang would have to show, at a minimum, that in entering his guilty plea, he had reasonably relied on a legal rule from which *Blake* and *Brieva-Perez* departed. See *Landgraf* v. *USI Film Products*, 511 U. S. 244, 270 (1994) (stating that retroactivity analysis focuses on "considerations of fair notice, reasonable reliance, and settled expectations"). The instability of the BIA's prior practice prevents Judulang from making this showing: The BIA sometimes recognized aliens in Judulang's position as eligible for §212(c) relief, but sometimes did not.

number of deportable aliens, which in turn would force the Government to make additional individualized assessments of whether to actually grant relief. Id., at 47.

Once again, the Government's rationale comes up short. Cost is an important factor for agencies to consider in many contexts. But cheapness alone cannot save an arbitrary agency policy. (If it could, flipping coins would be a valid way to determine an alien's eligibility for a waiver.) And in any event, we suspect the Government exaggerates the cost savings associated with the comparable-grounds rule. Judulang's proposed approach asks immigration officials only to do what they have done for years in exclusion cases; that means, for one thing, that officials can make use of substantial existing precedent governing whether a crime falls within a ground of exclusion. And Judulang's proposal may not be the only alternative to the comparable-grounds rule. See *supra,* at 11–12. In rejecting that rule, we do not preclude the BIA from trying to devise another, equally economical policy respecting eligibility for §212(c) relief, so long as it comports with everything held in both this decision and *St. Cyr*.

## III

We must reverse an agency policy when we cannot discern a reason for it. That is the trouble in this case. The BIA's comparable-grounds rule is unmoored from the purposes and concerns of the immigration laws. It allows an irrelevant comparison between statutory provisions to govern a matter of the utmost importance—whether lawful resident aliens with longstanding ties to this country may stay here. And contrary to the Government's protestations, it is not supported by text or practice or cost considerations. The BIA's approach therefore cannot pass muster under ordinary principles of administrative law.

The judgment of the Ninth Circuit is hereby reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*